IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DORIS J. CASSENS,                          )
                                           )
                    Plaintiff,             )
                                           )
vs.                                        )     CIVIL NO. 06-186-GPM
                                           )
ALBERT D. CASSENS and KAY SHARON )
CASSENS,                                   )
                                           )
                    Defendants.            )

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This action is before the Court on the Motion for Remand brought by Plaintiff Doris J. Cassens (Doc. 9). For the following reasons, the motion is **GRANTED**.

### INTRODUCTION

Doris J. Cassens married Defendant Albert D. Cassens in 1979. During their engagement, they entered into a prenuptial agreement defining the property Doris Cassens would receive in the event Albert Cassens died or the marriage were dissolved. In 2003 Doris Cassens and Albert Cassens separated, and Albert Cassens currently resides in Montana with his daughter, Defendant Kay Sharon Cassens.

Doris Cassens originally filed this action in January 2006 in the Circuit Court for the Twentieth Judicial Circuit, Monroe County, Illinois. In Count I of the operative complaint in this case, she seeks a judicial declaration that the prenuptial agreement she entered with Albert Cassens is void on the grounds that it was procured through fraud and is unconscionable; in the alternative,

she seeks a declaration that certain marital property is not subject to the agreement and that Albert Cassens breached the agreement. Count II seeks preliminary and permanent injunctive relief to prevent Albert Cassens and others acting in concert with him from dissipating the assets of the marital estate. Count III asserts a claim for common-law fraud against Albert Cassens, alleging that he fraudulently induced Doris Cassens to enter the prenuptial agreement. Finally, Count IV asserts a claim for alienation of affection against Kay Sharon Cassens.

Defendants have removed the action to this Court on the basis of federal diversity jurisdiction. *See* 28 U.S.C. § 1332; *Id*. § 1441. Plaintiff has moved for remand of the action to Illinois state court for lack of federal subject matter jurisdiction. The issue for the Court is whether the claims asserted in this case fall within the so-called "domestic relations" exception to federal diversity jurisdiction. For the reasons stated infra, the Court concludes that they do.

## DISCUSSION

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000, exclusive of interest and costs. *See Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2004); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000). The party seeking removal has the burden of establishing federal jurisdiction. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id*. Put another way, there is a strong presumption in favor of remand. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976).

At the outset, the Court notes that the record discloses some question as to whether complete diversity of citizenship is present in this case. As discussed, federal diversity jurisdiction requires

that in most instances parties to an action be of diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); *F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir. 1989). "Citizenship" for diversity purposes is determined of course by a party's domicile, *see Gilbert v. David*, 235 U.S. 561, 569 (1915); *Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 155 n.4 (7th Cir. 1994), which means the state where a party is physically present with an intent to remain there indefinitely. *See Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993); *Pederson v. Chicago Transit Auth.*, No. 96 C 1588, 1996 WL 328039, at *1 (N.D. Ill. June 11, 1996).

In this case, Doris Cassens is of course a citizen of Illinois. Her operative complaint alleges that she and Albert Cassens "lived together as husband and wife until August 21, 2003," when Kay Cassens "removed Albert to the State of Montana" (Doc. 3, ¶ 4). Doris Cassens alleges also that "[s]ince August 21, 2003, Kay has prevented Doris from communicating with Albert" (*Id.* ¶ 5). Doris Cassens' motion for remand asserts that "Doris and Albert were married in 1979 and are still married today. Doris and Albert lived together until August 2003 when Kay Cassens . . . , Albert's daughter[,] removed Albert to Montana without Doris' knowledge or consent. Kay has kept Albert from communicating with Doris since that time" (Doc. 9, ¶ 5).[1] The clear import of Doris Cassens' statements is that Albert Cassens' current residence in Montana is not voluntary. An involuntary

---

1.     Also, the Court is entitled to judicially notice that in a prior action in this Court by Doris Cassens involving factual and legal issues similar to those presented by this action, she alleged in essence that, in 2003, Kay Cassens abducted Albert Cassens from a hospital in Maryville, Illinois, where he was recovering from a broken hip, and took him to Montana. *See Cassens v. Alexander*, Civil No. 05-372-GPM, Doc. 3, ¶¶ 27-31; *see also* FED. R. EVID. 201; *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1091 & n.1 (N.D. Ill. 1991) (a district court can take judicial notice of the court file in a related case).

"removal" such as Doris Cassens alleges does not change Albert Cassens' domicile for diversity purposes. *See Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002) ("[I]nvoluntary removal does not change one's domicile."). Put another way, "since domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile." *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991); *see also* 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice & Procedure* § 3613 (3d ed. 1998 & Supp. 2005) ("[R]esidence in a place under . . . physical compulsion . . . normally will not result in the acquisition of a domicile at that location.") (collecting cases). If Albert Cassens is residing in Montana involuntarily, as Doris Cassens' submissions to the Court suggest, then his domicile remains Illinois, defeating complete diversity of citizenship.[2]

Furthermore, even assuming for the sake of argument that Albert Cassens is not in Montana under compulsion, as Doris Cassens seems to contend, the mere fact that he has resided there since 2003 is insufficient to establish that he is domiciled there. "[A] protracted absence from one's domicile does not establish a new domicile." *Gravdahl v. Conwell*, No. 00 C 0579, 2002 WL 398599, at *2 (N.D. Ill. Mar. 14, 2002) (citing *Seaboard Fin. Co. v. Davis*, 276 F. Supp.

---

2.   Adding to the jurisdictional confusion in this case, at least one of Defendants' submissions to the Court in this case identifies Kay Cassens as the guardian of Albert Cassens. *See* Doc. 22; *see also Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir. 1997) (a court is entitled to consider all facts that shed light on the existence of subject matter jurisdiction). In general an incompetent person is presumed to lack the capacity to change domiciles. *See Johnson v. Smithsonian Inst.*, 80 F. Supp. 2d 197, 200 (S.D.N.Y. 2000). Although under the law of this Circuit a guardian can change a ward's domicile for diversity purposes, a determination about whether a guardian changed a ward's domicile turns on whether the guardian removed the ward from one domicile to another for an improper purpose, such as the manufacture of federal diversity jurisdiction. *See Dakuras*, 312 F.3d at 258-59. Also, it appears that Kay Cassens did not become Albert Cassens' guardian until April 2006, and jurisdictional facts, including domicile, generally are determined as of the time a suit was commenced. *See Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996).

507, 510 (N.D. Ill. 1976)).  A domicile, once established, continues until it is superseded by a new

domicile.  *See Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980).  Domicile must be determined

from the totality of the circumstances, and courts generally focus on such indicia as residence, voting

practices, location of personal and real property, bank and brokerage accounts, membership in

associations, place of employment, driver's license, auto registration, and payment of taxes.  *See id*.

at 1181-82; *see also Abboud v. Northwest Home Servs. Inc.*, No. 90 C 141, 1990 WL 93345, at *2

(N.D. Ill. June 20, 1990).  No single factor can determine citizenship for diversity purposes.

*See, e.g., Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (changing voter

registration, driver's license, or tax status is not enough in itself to confer citizenship for diversity

purposes because it would be too easy to manipulate the court's jurisdiction).  In this instance,

Defendants, who have the burden of proving the place of Albert Cassens' domicile, *see Klement v.

West Irving Die Casting Co.*, No. 84 C 3910, 1986 WL 4130, at *1 (N.D. Ill. Mar. 28, 1986), have

failed to put into the record any of the evidence that would establish whether Albert Cassens has

established a new domicile in Montana.

Nonetheless, even if Albert Cassens in fact is domiciled in Montana, an issue the parties have

not disputed, *see Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006), the Court

concludes that federal diversity jurisdiction does not exist in this case for an additional reason,

namely, that Doris Cassens' claims against Albert Cassens clearly fall within the domestic relations

exception to diversity jurisdiction.  The domestic relations exception holds generally that "[t]he

whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws

of the States and not to the laws of the United States."  *Ankenbrandt v. Richards*, 504 U.S. 689, 692

(1992) (quoting *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890)); *see also Mansell v. Mansell*, 490

U.S. 581, 587 (1989) ("[D]omestic relations are preeminently matters of state law."); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."); *Newman v. Indiana*, 129 F.3d 937, 939 (7th Cir. 1997) ("The subject of domestic relations . . . is the primary responsibility of the state courts, administering state law, rather than the federal courts.").

In *Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir. 1982), the court explained the policy considerations underlying the domestic relations exception to diversity jurisdiction:

> At [the exception's] core are certain types of cases, well illustrated by divorce, that the federal courts are not, as a matter of fact, competent tribunals to handle. The typical divorce decree provides for alimony payable in installments until the wife remarries, and if there are children it will provide for custody, visitation rights, and child support payments as well. These remedies – alimony, custody, visitation, and child support – often entail continuing judicial supervision of a volatile family situation. The federal courts are not well suited to this task. They are not local institutions, they do not have staffs of social workers, and there is too little commonality between family law adjudication and the normal responsibilities of federal judges to give them the experience they would need to be able to resolve domestic disputes with skill and sensitivity.

*Id.* at 492; *see also Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001) (noting that "[t]he aim of the exception is to keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum").

Importantly, the rule that "domestic disputes involving divorce, custody or alimony issues are the province of state courts" is "a limitation on federal jurisdiction." *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995). "[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 703; *see also Gautreaux v. Pierce*, 707 F.2d 265, 270 (7th Cir. 1983) (Posner, J., concurring) ("Article III courts have no domestic relations jurisdiction, and will not even decide domestic relations questions that

arise in diversity cases."); *Azizarab v. State*, No. 99 C 8167, 2000 WL 152140, at *2 (N.D. Ill. Feb. 4, 2000) ("Core matters of family law, such as divorce and child custody, are considered to be the province of the state courts.  Federal courts have accepted, and Congress has acquiesced in, the rule that federal courts do not exercise jurisdiction to decide them.").

The domestic relations exception to diversity jurisdiction is a limited one.  In *Ankenbrandt*, the Court stated that "the domestic relations exception [is] narrowly confined to suits for divorce, alimony, or child custody decrees."  504 U.S. at 703 n.6; *see also Norton v. McOsker*, 407 F.3d 501, 505 (1st Cir. 2005) (quoting *Dunn*, 238 F.3d at 41) ("Despite the breadth of the phrase 'domestic relations exception' and the potential reach of the exception's aim, *Ankenbrandt* made clear that the exception is narrowly limited."); *Marran v. Marran*, 376 F.3d 143, 155 n.3 (3d Cir. 2004) (noting that the domestic relations exception is "only applicable in a narrow set of circumstances"); *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 386 n.2 (5th Cir. 2001) (noting that "[t]he exception is a narrow one").  While recognizing that the scope of the domestic relations exception to diversity jurisdiction is narrow, the Court concludes that Doris Cassens' claims against Albert Cassens fall squarely within the exception.

In *Friedlander v. Friedlander*, 149 F.3d 739 (7th Cir. 1998), an action by a woman and her father against the woman's former husband for intentional infliction of emotional distress based on his threats to reveal that the woman's father was not her natural father unless the father persuaded her to drop state-court proceeding to enforce an alimony order, the court explained the scope of the domestic relations exception.  "The domestic relations exception has a core and a penumbra.  The core is occupied by cases in which the plaintiff is seeking in federal district court under the diversity jurisdiction one or more of the distinctive forms of relief associated with the domestic relations

jurisdiction:  the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support."  *Id*. at 740.  "The penumbra of the exception consists of ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Id*.  Thus, the test of whether claims come within the core of the domestic relations exception to diversity jurisdiction is whether they "involve . . . distinctive forms of relief associated with the domestic relations jurisdiction." *Kuhn v. Kuhn*, No. 98 C 2395, 1998 WL 673629, at *4 (N.D. Ill. Sept. 16, 1998); *accord Blair v. Supportkids, Inc.*, No. 02 C 0632, 2003 WL 1908031, at *3 (N.D. Ill. Apr. 18, 2003).

In this case Doris Cassens' claims against her husband, Albert Cassens, clearly involve distinctive forms of relief associated with state-court domestic relations jurisdiction so as to fall within the core of the matters excluded from diversity jurisdiction by the domestic relations exception.   Doris Cassens' operative complaint in this case unmistakably seeks judicial determinations regarding the scope of her interest in the property of her marriage with Albert Cassens; in fact, this is the primary object of the complaint.  To adjudicate her claims, the Court would be required to make determinations about Doris Cassens' rights in marital property that effectively will define the scope of a disposition of marital property in the event divorce proceedings are commenced between her and Albert Cassens, *see* 750 ILCS 5/503, and which in turn will affect a judicial determination about maintenance.  *See* 750 ILCS 5/504.  Any decisions by this Court about the validity or invalidity of the prenuptial agreement between Doris Cassens and Albert Cassens, her interest in marital property, and the other matters contested in Doris Cassens' claims against her husband, would be preclusive in state-court divorce proceedings under collateral estoppel principles.  *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636

N.E.2d 503, 510 (Ill. 1994); *see also In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767-68 (7th Cir. 2003).[3]

"[T]he [domestic relations] exception to [diversity] jurisdiction arises in those cases where a federal court is asked to grant a decree of divorce or annulment, or to grant custody or fix payments for support." *Ankenbrandt*, 504 U.S. at 703 n.6 (quoting *McIntyre v. McIntyre*, 771 F.2d 1316, 1317-18 (9th Cir. 1985)).  In this case, although Doris Cassens' claims against Albert Cassens are not expressly denominated as a request for a federal decree regarding divorce, alimony, or child custody, it is clear that they are in the nature of a request for a decree regarding the division of marital property and alimony.  *See Surface v. Dobbins*, Nos. MC-3-89-021, 3-87-01479, 3-89-0116, MC-3-91-016, 3-90-0250, 1993 WL 1318609, at **3-5 (S.D. Ohio Sept. 23, 1993) (noting that only an "incautious reader" of *Ankenbrandt* would conclude that the domestic relations exception "only applies to actual applications for [divorce, alimony, or child custody] decrees" and not to suits in federal court that effectively request the same relief).

Although Defendants insist that the domestic relations exception to diversity jurisdiction is not triggered unless parties actually have commenced divorce proceedings, the Court disagrees.  In *Ankenbrandt* the Supreme Court suggested in dictum that certain cases involving domestic relations may be appropriate for abstention under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "It is not inconceivable . . . that in certain circumstances, the abstention principles developed in *Burford* . . . might be relevant in a case involving elements of the domestic relationship even when

---

3.    The Court notes also that such rulings would be preclusive in state-court proceedings regarding the distribution of Albert Cassens' property upon death. *See Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)) (stating that it is "settled law" that "a federal court has no jurisdiction to probate a will or administer an estate").

the parties do not seek divorce, alimony, or child custody.  This would be so when a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *Ankenbrandt*, 504 U.S. at 705-06 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).  "Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Id*. at 706. The correct reading of this language from *Ankenbrandt* is, in the Court's view, that in cases which implicate neither the core nor the penumbra of state domestic relations law, but which nonetheless implicate important questions of such law, a federal court may abstain under *Burford* principles. The Court already has concluded that Doris Cassens' claims against Albert Cassens involve core domestic relations matters regarding disposition of marital property and alimony.  Thus, the Court need not speculate as to whether *Burford* abstention is warranted in this case.

In holding that Doris Cassens' claims against her husband fall within the domestic relations exception, the Court is mindful of the principle that doubts about federal jurisdiction on removal are to be resolved in favor of remand.  *See Doe*, 985 F.2d at 911.  Also, the Court is guided by the policy considerations underlying the exception.  To permit claims like the ones asserted by Doris Cassens against her husband to be adjudicated in federal court would effectively eviscerate the exception, by allowing married persons to jockey for position in impending divorce proceedings by shopping for a favorable forum in state or federal court, as their interests dictate.  It is impossible to see how the goals of the domestic relations exception are furthered by, for example, allowing a spouse fearful of a "hometown" advantage on the part of another spouse to pursue an action in federal court seeking an adjudication of his or her interests in marital property under the guise of a request for

declaratory relief, thus precluding further state-court adjudication of the issue.  The Court notes that one of the traditional concerns of federal courts in applying the domestic relations exception has been to prevent spouses from "play[ing] one court system[, i.e., federal or state,] off against the other." *Fusaro v. Fusaro*, 550 F. Supp. 1260, 1263 (E.D. Pa. 1982) (in a breach of contract and fraud action by a former husband arising from a postnuptial settlement agreement in which it was alleged that certain property distributed pursuant to a property settlement agreement had been valued incorrectly through either fraud or mutual mistake, the court held that, for purposes of the domestic relations exception to federal diversity jurisdiction, the action was properly denominated a domestic relations case); *see also Allen v. Allen*, 518 F. Supp. 1234, 1237 (E.D. Pa. 1981).

In sum, the Court concludes that Doris Cassens' claims against her husband, Albert Cassens, involve distinctive forms of relief associated with state-court domestic relations jurisdiction and fall within the core of the matters excluded from diversity jurisdiction by the domestic relations exception.  *See Friedlander*, 149 F.3d at 740; *see also Kahn v. Kahn*, 21 F.3d 859, 861-62 (8th Cir. 1994) (declining, under the domestic relations exception, to exercise jurisdiction over a former wife's action against her former husband for fraud and conversion, based on the husband's alleged misappropriation of the wife's separate property during marriage; the evidence proffered both in federal court and in the divorce action and property settlement were identical and involved conduct that occurred exclusively throughout the duration of the marital relationship, so that proof of the wife's claims would require the federal court to inquire into matters directly related to the marriage or property settlement); *Fagone v. Fagone*, 648 F. Supp. 488, 489 (D. Me. 1986) (in an action brought against the plaintiff's former wife in which it was alleged that she acted unlawfully in connection with a piece of property in which the plaintiff claimed a partial ownership interest, the

court held that it could not exercise diversity jurisdiction because the action was inextricably connected with a domestic relations matter, so that it would be either impossible or inadvisable to take jurisdiction over it); *cf. McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999) (holding that a former wife's complaint against her former husband, alleging breach of an agreement for the sale of real estate, was barred by the domestic relations exception:  "Plaintiff is attempting to disguise the true nature of the action by claiming that she is merely making a claim for damages based on a breach of contract.").  Therefore, the Court will remand this case to state court for lack of subject matter jurisdiction.[4]

## CONCLUSION

For the foregoing reasons, the Motion for Remand (Doc. 9) is **GRANTED**.  Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court for the Twentieth Judicial Circuit, Monroe County, Illinois, for lack of federal subject matter jurisdiction.  The Motion to Disqualify Gordon Broom as Defense Counsel brought by Plaintiff Doris J. Cassens (Doc. 15), the Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint brought by Defendant Albert D. Cassens (Doc. 22), the Motion for Summary Judgment brought by Defendant Albert D.

---

4.     The Court is not wholly persuaded that Count IV of Doris Cassens' operative complaint, alleging alienation of affection against Kay Cassens, comes within the domestic relations exception to diversity jurisdiction.  Alienation of affection is a common-law tort recognized under Illinois law, *see Coulter v. Renshaw*, 418 N.E.2d 489, 490-91 (Ill. App. Ct. 1981), and does not necessarily implicate matters of divorce, alimony, or child custody.  However, the Court is not aware of any procedural mechanism that would permit severance of Count IV from the rest of Doris Cassens' claims so as to permit the Court to exercise jurisdiction over that count.  In some instances a federal court may add or drop parties or claims to preserve federal jurisdiction in suits brought originally in federal court, *see* FED. R. CIV. P. 21; *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 643-44 (W.D. Wis. 2000), but the Court is not aware of any controlling authority authorizing the use of Rule 21 to permit a federal court to exercise jurisdiction in a removed case over the objections of a plaintiff.  Therefore, the Court will remand this action in its entirety.

Cassens (Doc. 23), the Motion to Strike brought by Defendant Albert D. Cassens and Defendant Kay Sharon Cassens (Doc. 27), and the Motion to Strike Defendants' Sur-reply Masquerading as a Motion to Strike brought by Plaintiff Doris J. Cassens (Doc. 28) are **DENIED as moot**.  The hearing on Plaintiff's Motion for Remand (Doc. 9) currently scheduled for May 1, 2006, is **CANCELLED**.

 **IT IS SO ORDERED.**

 DATED:  4/27/2006

         s/ G. Patrick Murphy      
         G. PATRICK MURPHY
         Chief United States District Judge